Pauline R. MERRITT, Appellant,

v.

UNITED STATES of America and C. A. Merritt, Appellees.

No. 6567.

United States Court of Appeals
Tenth Circuit.

June 27, 1961.

Carloss Wadlington, Ada, Okl. (Clark Hurd, Oklahoma City, Okl., on the brief), for appellant.

Hugh Nugent, Department of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Paul W. Cress, U. S. Atty., George Camp, Asst. U. S. Atty., Oklahoma City, Okl., and Roger P. Marquis, Department of Justice, Washington, D. C., on the brief), for appellee, United States.

James E. Grigsby, Oklahoma City, Okl., for appellee, C. A. Merritt.

Before BRATTON, LEWIS, and BREITENSTEIN, Circuit Judges.

BRATTON, Circuit Judge.

The appeal in this case brings here for determination rival claims of a former

husband and wife to a fund in the registry of the court.

In 1960, the United States instituted the action to acquire by condemnation for postal purposes two lots in the town of Bethany, Oklahoma. The unknown heirs, representatives, devisees, trustees, or assigns of J. T. Seaton, sometimes hereinafter referred to as Seaton; Maria E. Seaton, sometimes hereinafter referred to as Maria; Cleo A. Merritt, sometimes hereinafter referred to as Cleo; Pauline R. Merritt, sometimes hereinafter referred to as Pauline; First National Bank of Bethany, sometimes hereinafter referred to as the bank; were made parties defendant. It was alleged in the complaint that the reasonable value of the property was $17,000 and that sum was deposited in the registry of the court.

The record discloses these facts and circumstances. Seaton and Maria were husband and wife, and they owned the property as joint tenants. In 1951, they were quite aged, and he died intestate in 1955. Cleo and Pauline were married in 1935 and lived together as husband and wife until they were divorced in 1953. In 1951, a written contract was prepared in which the Seatons were named as parties of the first part and the Merritts as parties of the second part. The contract provided among other things that the Seatons should execute a warranty deed conveying the property to the Merritts; that the Seatons should remain in possession of the property; that the deed and an executed copy of the contract should be placed in escrow in the bank; that the Merritts should pay to the Seatons as long as they both should live the sum of $90 per month for maintenance, medical care, and attention; that upon the death of either of the Seatons, payments to the survivor should thereafter be $65 per month; that the Merritts should assist in the payment of nursing or doctor bills incurred during the lifetime of the Seatons; that the Merritts should purchase two grave sites for the Seatons and defray the cost of their funerals, not to exceed $700 each; that the

Merritts should pay certain paving taxes, ad valorem taxes, and items of upkeep and maintenance of the property; that the contract should be irrevocable except for nonperformance; that upon the death of Seaton or Maria, whichever was later, the deed should be delivered to Cleo and Pauline, or the survivor of them; and that in the event the property should be condemned by any city or county unit, the money arising therefrom should be received by the bank and held in escrow until the death of Seaton or Maria, whichever was later, and should then be surrendered to Cleo and Pauline, or the survivor of the two. The contract was signed by the Seatons and Cleo. But Pauline declined to sign it. The Seatons executed the deed. Cleo and Pauline were named as grantees therein. Her name was included by mistake. Cleo has performed and continues to perform currently his commitments under the contract, but Pauline has not taken any action in fulfillment of the obligations specified therein. In 1959, Maria executed a deed conveying the property to Cleo; and in 1960, the two of them executed an agreement cancelling the escrow agreement and withdrawing from the bank the deed which the Seatons had previously executed; but no consideration passed to Maria for the deed or the agreement.

The Merritts entered into a property settlement agreement prior to their divorce. The decree entered in the divorce action referred to the settlement agreement and recited that the property was being divided in the decree as provided in the agreement. No reference was made in the agreement or the decree to the Seaton property. The decree vested title in certain properties in the parties, respectively; it awarded to Pauline alimony in the sum of $20,000, payable at the rate of $100 per month; and it expressly provided that the award of alimony should constitute a lien upon a described tract of land in the Cockrell Place Addition in Oklahoma County.

Cleo and Pauline filed claims to the fund deposited in the registry of the court. Cleo claimed under the contract

with the Seatons, under the warranty deeds, and under the cancellation of the escrow agreement. Pauline claimed $9,364.50 of the fund on the ground that she had an unpaid balance in that amount on the judgment rendered in the divorce action; and she also claimed $8,500 of the fund on the ground that she was entitled to that amount because she was named as one of the grantees in the deed placed in escrow.

A master was appointed. He heard evidence and made findings of fact and conclusions of law. The court entered judgment determining that Pauline had no interest in the Seaton property or the fund in the registry of the court; directing that the fund, less the amount paid to the master, be paid to the bank to be held pursuant to the escrow agreement; and providing that upon Cleo depositing with the bank a bond to be approved by the clerk of the court in the sum of $15,000, conditioned that he would perform the agreement between the Seatons and Cleo insofar as Maria was concerned, the bank was authorized and directed to pay such sum to Cleo. An amendment to the decree was entered which determined that $17,000, without interest, was the total amount which the Government should pay, and that it should not be liable for any additional amount as the result of any different distribution of that sum occasioned by an appeal between Cleo and Pauline. Pauline appealed.

■ The first attack made upon the judgment is that the court erred in not ordering the sum of $9,364.50 representing the unpaid balance due on the judgment rendered in the divorce action paid to Pauline out of the fund in the registry of the court. But Cleo did not have title to the property to which a judgment lien could attach. All he had was a contract for the delivery of the deed in escrow. And the contract provided that if he supported the Seatons during the remainder of their lives, paid certain items of upkeep and maintenance, and provided funerals, the deed should be delivered to him upon the death of the

survivor of the Seatons. The contract further provided that it should be revokable upon failure of performance. And the contract further provided in effect that in the event the property should be condemned, the money paid therefor should be placed in escrow in the bank and held there until the death of the last of the Seatons. Until the death of the survivor of the Seatons, Cleo was not to be vested with title to the property, or the proceeds in the event of condemnation. Moreover, the judgment entered in the divorce action was payable in monthly sums of $100. The payments were to extend over a period of more than sixteen years. And at the time of the hearing before the master none of them was in default. In the circumstances, Pauline did not have the right in equity to combine the unpaid balance into a lump sum, accelerate the payment of the whole thereof, and assert a lien for the payment thereof against the fund in the registry of the court.

■ The next ground of attack upon the judgment is that Cleo and Pauline had a joint interest in the property and, therefore, the court erred in not awarding to her one-half of the fund in the registry of the court, less one-half or all of the payments which Cleo made on the contract with the Seatons subsequent to the decree of divorce. The substance of the argument is that under the contract and the deed which were placed in escrow, Cleo and Pauline had a joint interest in the property and, hence, a like interest in the fund. But Pauline declined to sign the contract. Her name was included in the deed as a grantee by mistake. And she took no action in fulfillment of the obligations created by the contract. To award her any part of the fund based upon the contract and deed placed in escrow in the bank would be a grant to her of an unearned gratuity for which she gave nothing as consideration. And equity does not lend itself readily to awards of that kind.

■ The third ground of attack upon the judgment is two-fold. It is urged that the master erred in finding that

the name of Pauline was included in the deed as a grantee by mistake, and also erred in holding that Cleo was entitled to reformation of the deed. The finding of mistake is adequately supported by the facts and the inferences fairly to be drawn therefrom. And while the master did conclude that the court should reform the deed by striking the name of Pauline therefrom as a grantee therein, no such provision was included in the judgment of the court.

Finally, it is urged that the court erred in attempting to amend the judgment. It is said that the amendment was entered out of time and without notice to Pauline. Be that as it may, since Pauline had no interest in the fund, entry of the order of amendment did not prejudice her rights.

The judgment is affirmed.